UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ALPHONSO GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. |
| | ) | 4:11-cv-00183-CDL |
| VALLEY HOSPITALITY SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT VALLEY HOSPITALITY SERVICES, LLC'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Valley Hospitality Services, LLC ("Valley"), submits this memorandum of law in support of its Motion for Summary Judgment. Valley submits there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law on all claims raised by Plaintiff Alphonso Gomez.

I.   **INTRODUCTION**

Gomez, a former Valley employee, alleges that Valley discriminated against him on the basis of his race and retaliated against him for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Gomez has identified no facts in support of his claims.

Valley respectfully submits that the undisputed facts establish that Gomez's claims are not viable as a matter of law because: (1) Gomez has not established a *prima facie* case of discrimination or retaliation; and (2) Valley has identified

legitimate, nondiscriminatory reasons for its actions. Valley's decision not to promote Gomez was based on (1) his inadequate job performance as an Assistant Manager; (2) his negative attitude; (3) his supervisors' determination that he was not qualified to be a General Manager; (4) his lack of experience in full-service restaurant management; and (5) his own statements that he did not want the position. Gomez was counseled on multiple occasions regarding his performance, and was provided multiple opportunities to make improvements. However, Gomez's job performance did not improve and Valley made the decision to terminate his employment after he failed to report for work for four consecutive days without explanation.

There are no facts that suggest that Valley's stated non-discriminatory reasons for its actions were pretextual. In fact, Gomez himself stated that he believed his supervisor wanted to get him fired from Valley because Gomez had taken action that resulted in Valley terminating two of his supervisor's favorite employees. For these reasons, Valley's motion for summary judgment should be granted.

## II.  <u>STATEMENT OF FACTS</u>

Valley is a Georgia corporation that owns and operates several hotels and restaurants in Columbus and LaGrange, Georgia, including: (1) a Houlihan's Restaurant located inside a Marriott hotel (the "Marriott Houlihan's"); and (2) a Houlihan's

Restaurant located inside a Doubletree hotel (the "Doubletree Houlihan's"). (Declaration of David Hay, attached hereto as exhibit "A" ("Hay Dec."), ¶ 3). Valley also currently manages (but does not own) The Cannon Brew Pub in Columbus, Georgia. (Hay Dec., ¶ 4). From July 8, 2008 until November 14, 2009, Valley Hospitality managed (but did not own) a Locos Grill & Pub ("Locos") in Columbus, Georgia. (Hay Dec., ¶ 5).

Brian Plemmons serves as Valley's President. (Hay Dec., ¶ 6). David Hay has been Valley's Human Resources Director since March of 2008. (Hay Dec., ¶ 2). Donny Troutman, Valley's Director of Food and Beverage oversees all food and beverage operations for Valley. (Hay Dec., ¶ 7). Each restaurant is headed by a general manager, who oversees all assistant managers of the restaurant. (Hay Dec., ¶ 8). Both general and assistant managers report directly to the Director of Food and Beverage. (Hay Dec., ¶ 9). All restaurant employees report to the general manager and assistant managers of the restaurant in which they work. (Hay Dec., ¶ 10). During the period that Gomez was employed at Valley, three of Valley's General Managers were African American. (Hay Dec., ¶ 11).

## A.   Valley's Policies

Valley is an equal opportunity employer and has a policy that specifically prohibits any form of harassment or discrimination on the basis of race, color, religion, gender,

national origin, age or disability. (Hay Dec., ¶ 12, Exh. 1). Valley's handbook encourages employees to report any offensive incidents so that the company can take appropriate corrective action. (Hay Dec., ¶ 13). Prior to filing his charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), Gomez did not report any alleged discrimination on the basis of his race to Valley. (Hay Dec., ¶ 14).

### B.   Mr. Gomez's Employment With Valley

On June 3, 2008, Troutman hired Gomez as the Assistant Manager for the Marriott Houlihan's restaurant. (Hay Dec., ¶ 15; Deposition of Alphonso Gomez, Sr. ("Gomez Depo."), pp. 61-62, 65-66, Exh. 3, excerpts of which are attached hereto as Exhibit "B"). Prior to his employment with Valley, Gomez did not have experience in full-service restaurant management.[1] (Gomez Depo., pp. 15-52, Exhs. 1, 2). At the time of his hire, Valley provided Gomez with a copy of Valley's Employee Handbook and trained him on the EEO and no harassment policies. (Gomez Depo., p. 87, 89-90, Exh. 6; Hay Dec., ¶ 16). As an Assistant Manager, Gomez's duties included, among other things, supervising restaurant personnel, ensuring that all restaurant employees are trained in

---

[1] Gomez had worked: (1) as an assistant manager at Piccadilly Cafeteria (a "cafeteria-style restaurant") for approximately six months; (2) as an assistant manager at Atlanta Bread Company (a "sandwich shop" in which you order food from a cashier) for approximately eight months; and (3) as a general manager at Zaxby's (a fast-food restaurant) for approximately two years. (Gomez Depo., pp. 15-52, Exhs. 1, 2).

Valley's procedures, overseeing all aspects of the daily operation of the restaurant and monitoring quality of service in the restaurant. (Gomez Depo., pp. 65-67, Exh. 3).

In or around the fall of 2008, Troutman counseled Gomez regarding his performance. Troutman told Gomez that he had heard that Gomez was going to a bar with employees after work hours. Troutman told Gomez that he did not want managers to fraternize with employees. Troutman also told Gomez that Valley had received a complaint from a guest who had been unhappy with her food, but was unable to speak with a manager. (Gomez Depo., pp. 96-98).

On or about December 12, 2008, Valley received an e-mail from a customer in which she complained that she had visited the Marriott Houlihan's to purchase a gift certificate and that, although there were no customers dining in the restaurant, it took over 45 minutes to find someone to help her. (Hay Dec., ¶ 17, Exh. 2; Gomez Depo., pp. 100-101, Exh. 9). She said that when the manager finally did come out into the restaurant, he did not acknowledge her or apologize for the delay in assisting her. (Hay Dec., Exh. 2). On or about December 18, 2008, Troutman and Hay met with Gomez and verbally counseled him regarding the customer complaint. (Hay Dec., ¶ 18; Gomez Depo., pp. 101-104, Exh. 10).

Shortly after the December 18, 2008 meeting, employees at

the Marriott Houlihan's advised Hay that Gomez had made negative comments to them regarding his employment with Valley. (Hay Dec., ¶ 19). As a result, on December 26, 2008, Hay sent Gomez an intracompany memorandum counseling him that, as a manager, he should refrain from expressing negative comments about Valley to the staff he supervises, as it negatively affects staff morale. (Hay Dec., ¶ 20, Exh. 3; Gomez Depo., pp. 111-114, Exh. 11). Hay also expressed concern regarding Gomez divulging confidential communications between Valley's managers and officers with employees. (Hay Dec., Exh. 3; Gomez Depo., Exh. 11).

In the December 26, 2008 memorandum, Hay also advised Gomez that he believed Gomez could advance in the company, but that he needed to make improvements to his attitude and "step up to the plate." (Hay Dec., Exh. 3; Gomez Depo., Exh. 11). In an effort to help Gomez improve as a manager, Hay and Troutman transferred Gomez to Locos as an Assistant Manager effective January 6, 2009. (Hay Dec., ¶ 21; Gomez Depo., pp. 113-114).

1.    Mr. Gomez's Work at Locos

In or around June of 2009, Valley hired Lindsey Dozeman as an Assistant Manager at Locos. (Hay Dec., ¶ 22). Dozeman had previously been employed as an assistant manager at a full-service restaurant. (Hay Dec., ¶ 23, Exh. 4). Around that same time, Valley terminated the employment of Robert Stewart, the General Manager at Locos, for issues related to his job

performance. (Hay Dec., ¶ 24; Gomez Depo., p. 116). Valley temporarily transferred Anthony Brown, the General Manager at The Cannon Brew Pub, to Locos to replace Stewart. (Hay Dec., ¶ 25). Brown is also African American. (Hay Dec., ¶ 27). Troutman informed Gomez and Dozeman that they were both being considered for promotion to General Manager at Locos, and that Troutman and Brown would observe their job performance over the next several weeks in order to determine who would be promoted. (Hay Dec., ¶ 27; Gomez Depo., pp. 118-119, 127-129, Exh. 12). Gomez informed Brown that he was not interested in the position and that Valley Hospitality should promote Dozeman. (Gomez Depo., pp. 130-132, 139-141).

On June 23, 2009, Troutman verbally counseled Gomez regarding a complaint made by a female server at Locos. The server complained that Gomez had grabbed her by the arm and pulled her over to a table that needed to be cleaned. Troutman counseled Gomez to refrain from physical contact with the staff. (Hay Dec., ¶ 28; Gomez Depo., pp. 109-110; 132-134, Exh. 18).

On June 30, 2009, Brown emailed Troutman regarding Gomez's job performance, stating that he was "unable to recommend Al Gomez" for the General Manager position because he felt that Mr. Gomez was "not ready to handle the responsibility" and had "showed little to no interest in advancing [in the company] by his many irresponsible actions . . . such as not completing

tasks by [the] requested due date, not adhering to company policies, and showing no initiative to advance." Brown also stated that Gomez had discussed confidential issues with members of the staff. (Hay Dec., ¶ 29, Exh. 5). Based on Brown's recommendations and Dozeman's extensive experience in full-service restaurant management, Valley promoted Dozeman to the General Manager position on July 14, 2009. (Hay Dec., ¶ 30).

Approximately one month later, in August 2009, Valley terminated Robert Durham Thacker, the General Manager of the Doubletree Houlihan's. (Hay Dec., ¶ 31). Gomez was not considered as a candidate to replace Thacker because Valley had recently determined that he was not qualified for promotion as a General Manager. (Hay Dec., ¶ 32). On August 12, 2009, Valley hired Aldo DeSanto as General Manager of the Doubletree Houlihan's. DeSanto had extensive experience managing full-service restaurants. (Hay Dec., ¶ 33).

On September 29, 2009, Gomez received a written warning regarding a customer complaint. (Hay Dec., ¶ 34; Gomez Depo., p. 144–145, Exh. 21). The customer complained that on September 28, 2009, he attempted to dine at Locos at approximately 9:24 p.m., but the doors were locked even though the posted hours of operation stated that the restaurant was open until 10:00 p.m. (Hay Dec., ¶ 34; Gomez Depo., pp. 144–146, Exh. 21). Gomez was counseled that the restaurant must remain open to customers

until the posted closing time, unless he received approval from the Director of Food and Beverage to close early. (Hay Dec., ¶ 35, Exh. 6; Gomez Depo., Exh. 21).

On October 30, 2009, Valley received a written complaint regarding Gomez from a Locos employee. (Hay Dec., ¶ 36, Exh. 7). The employee alleged that Gomez had treated him rudely and with disrespect and had unreasonably denied the employee's request to eat a meal at the beginning of his shift so that he could take prescription medication that had to be taken with food. (Hay Dec., ¶ 37, Exh. 7; Gomez Depo., pp. 146-148).

## 2.   Reduction in Management Staff

In late 2009, Valley was forced to eliminate one assistant management position at each of its Houlihan's restaurants due to financial constraints. (Hay Dec., ¶ 38). On November 14, 2009, Locos terminated its management agreement with Valley. (Hay Dec., ¶ 39). Locos offered to hire Dozeman as its General Manager, but she declined, stating that she wanted to remain with Valley. (Hay Dec., ¶ 40). Locos also offered to hire Giancarlo Arcesi, the Kitchen Manager, and he accepted the offer and resigned from Valley. (Hay Dec., ¶ 41). Locos did not offer a position to Gomez. (Hay Dec., ¶ 42; Gomez Depo., p. 149).

Because Valley had already been forced to reduce its management staff at its other restaurants, it had only one management position open as of November 2009 – an Assistant

Manager position at the Doubletree Houlihan's. (Hay Dec., ¶ 43). Because Dozeman had been employed with Valley as a General Manager, Valley offered this Assistant Manager position to her. (Hay Dec., ¶ 44). She accepted the position and agreed to an annual salary reduction of $10,000. (Hay Dec., ¶ 45). Because Valley did not have a management position open to offer Gomez, Valley informed him that his employment would end as of November 14, 2009. (Hay Dec., ¶ 46; Gomez Depo., pp. 149-151).

### 3.  Mr. Gomez's Work at the Doubletree Houlihan's

Dozeman was scheduled to begin working at the Doubletree Houlihan's on November 17, 2009. (Hay Dec., ¶ 47). However, on November 17, Dozeman resigned from Valley. (Hay Dec., ¶ 48). Valley immediately contacted Gomez and asked him to return to work as an Assistant Manager at the Doubletree Houlihan's. (Hay Dec., ¶ 49; Gomez Depo., pp. 152-153). Gomez accepted this offer, and was never removed from Valley's payroll. (Hay Dec., ¶ 50; Gomez Depo., pp. 154-155, Exh. 24).

Despite being informed on multiple occasions that he needed to improve his job performance, Gomez continued to exhibit a negative attitude and failed to take direction from his supervisors. (Hay Dec., ¶ 51). On January 31, 2010, Gomez reported to work one hour late. (Hay Dec., ¶ 52; Gomez Depo., pp. 161-162, Exh. 25). When he arrived at the restaurant at 4:00 p.m., DeSanto asked him to prepare the restaurant for dinner.

(Hay Dec., ¶ 53; Gomez Depo., Exh. 25). Because the restaurant had been very busy for lunch that day, there were several tasks that needed to be performed in order to sufficiently prepare the restaurant. (Hay Dec., ¶ 53; Gomez Depo., Exh. 25). DeSanto asked Gomez to assist in preparing the dining room while he went back to the office to finish his paperwork from lunch. (Hay Dec., ¶ 53; Gomez Depo., Exh. 25).

When he returned to the dining room approximately twenty minutes later, DeSanto discovered that Gomez had not completed any of the tasks. (Gomez Depo., Exh. 25). DeSanto again asked him to clean and reset tables and Gomez responded that cleaning tables is the servers' job. DeSanto repeated his request and Gomez told DeSanto "well you go and do it." (Hay Dec., ¶ 54). Gomez went to speak with customers dining in the restaurant and DeSanto performed several of the tasks he had asked Gomez to perform. (Hay Dec., ¶ 55). When Gomez finally finished speaking with customers, DeSanto asked Gomez to accompany him to the office, where he spoke with Gomez about his failure to adequately perform his management duties. Gomez responded by yelling directly in DeSanto's face. (Hay Dec., ¶ 56; Gomez Depo., pp. 165–168, Exh. 25). DeSanto then told Gomez that he would be suspended for insubordination. Gomez told DeSanto he was an "ass," threw a stack of server reports and cash he was holding on the desk and walked out of the office. DeSanto called

to Gomez that the server reports needed to be verified before he left, but Gomez responded by calling DeSanto an "asshole" and leaving the restaurant. (Hay Dec., ¶ 57; Gomez Depo., Exh. 25). On February 1, 2010, Gomez received a five-day suspension for failing to perform his duties and insubordination. (Hay Dec., ¶ 58, Exh. 8; Gomez Depo., Exh. 25).

On February 10, 2010, DeSanto sent Gomez an e-mail regarding his failure to complete his closing duties the previous evening. (Gomez Depo., pp. 172-173, Exh. 26). Among other things, DeSanto stated that Gomez had failed to complete necessary paperwork and properly clean the dining room. DeSanto also noted that the bar bank was short $40 and the safe was short $60. (Gomez Depo., Exh. 26). According to Gomez, DeSanto was looking for reasons to discipline Gomez because DeSanto was upset with Gomez for making reports that caused Valley to terminate the employment of two of DeSanto's favorite servers. (Gomez Depo., pp. 157-160, 173-177).

On February 15, 2010, Gomez, Hay, DeSanto and Plemmons met to discuss Gomez's job performance. (Hay Dec., ¶ 59). Plemmons stated that he was concerned with the negative reports he had received regarding Gomez's attitude and performance. (Hay Dec., ¶ 60). He directed Gomez to improve his performance and attitude. (Hay Dec., ¶ 61). According to Gomez, Plemmons spoke to him in a harsh tone and would not allow him to speak during

the meeting. Gomez also alleges that at one point during the meeting when Gomez tried to speak, Plemmons told him: "You shut your mouth, boy." (Gomez Depo., p. 182). Hay did not hear Plemmons call Gomez "boy" during this meeting. (Hay Dec., ¶ 62).

On February 26, 2010, Gomez called DeSanto and informed him that he was unable to work that day. (Hay Dec., ¶ 63; Gomez Depo., p. 190). On February 27, 2010, Gomez sent DeSanto a text message saying he was again unable to report for work. (Hay Dec., ¶ 64; Gomez Depo., p. 190). On February 28, 2010, Gomez sent the Doubletree Houlihan's kitchen manager a text stating he would not report for work. (Hay Dec., ¶ 65; Gomez Depo., p. 190). On March 1, 2010, Gomez sent DeSanto a text message saying he was again unable to report for work. (Hay Dec., ¶ 66; Gomez Depo., pp. 190–191). Page 19 of Valley Hospitality's Employee Handbook explains that all employees must personally notify his or her supervisor if he or she is going to be late or absent from work for any reason. (Hay Dec., Exh. 1). Therefore, Gomez was aware that a text message was not an acceptable method for reporting an absence. The Employee Handbook further provides that absenteeism, tardiness and failure to report to work without notifying the company may result in discipline up to and including immediate termination. (Hay Dec., Exh. 1).

On March 2, 2010, DeSanto, Troutman and Hay decided to terminate Gomez's employment based upon his failure to report to

work and failure to properly report his absences, as well as his ongoing inadequate job performance. (Hay Dec., ¶ 67). Hay informed Gomez of his termination and Gomez told Hay that he had not reported for work because he was under medical care. (Hay Dec., ¶ 68, Exh. 9). However, Gomez did not inform anyone prior to his termination of any medical condition that prevented him from working, nor did he provide Valley documentation supporting this allegation. (Hay Dec., ¶ 69; Gomez Depo., p. 192).

Gomez alleges that DeSanto once told him that "white guys work daytime; black guys work nighttime." Gomez further alleges that, after he made this comment, DeSanto laughed and told Gomez he was "kidding." (Gomez Depo., p. 197). Gomez further alleges that during the fall of 2008, several employees at the restaurant engaged in conversations regarding the presidential election that caused "friction." (Gomez Depo., pp. 199–200). According to Gomez, Troutman once asked him if he was voting for Barack Obama because he is African American or because he was the best candidate. (Gomez Depo., p. 199). Other than these alleged comments, no other Valley representative/supervisor said anything to Gomez about his race. (Gomez Depo., pp. 200–201).

## III. ARGUMENT AND CITATION OF AUTHORITY

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Lockaby v. United Testing Group, Inc.*, 986 F. Supp. 1400 (N.D. Ga. 1997). Once the movant has met its initial burden, the nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *Lockaby*, 986 F. Supp. at 1400.

**B. PLAINTIFF'S TITLE VII CLAIMS FAIL AS A MATTER OF LAW.**

Gomez alleges that Valley discriminated and retaliated against him in violation of Title VII. However, Gomez's Complaint fails to identify any facts that support his claims of discrimination and retaliation.

First and foremost, Valley was aware of Gomez's race when it hired him as an Assistant Manager. This demonstrates that Valley held no bias against him on that basis, and the law presumes that no bias exists under such circumstances.

In support of his discrimination claim, Gomez alleges that: (1) Plemmons called him "boy" on one occasion; (2) DeSanto once joked to him that "blacks work at night"; and (3) Troutman asked him if intended to vote for President Obama because he is African American. Gomez has confirmed that no other statements were made to him about his race. Pursuant to Eleventh Circuit

case law, these statements do not constitute direct evidence of discrimination. See *Burrell v. Bd. of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997)(Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption."). Moreover, the United States Supreme Court has stated, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, *v. Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275 (1998).

In claims supported by circumstantial evidence, this Court must follow the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, Gomez has the burden of establishing a *prima facie* case of discrimination and/or retaliation. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir. 1997).

If a plaintiff establishes a *prima facie* case of discrimination or retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its actions. *See Rojas,* 285 F.3d at 1342; *Combs,* 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered

reasons." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. If the employer satisfies its burden by articulating one or more reasons, then any presumption of discrimination and/or retaliation is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.* at 255–26, 101 S.Ct. at 1094–95. If the proffered reason is one that might motivate a reasonable employer, a plaintiff must meet the reason head on and rebut it. *See Chapman,* 229 F.3d at 1030.

Valley respectfully submits that Gomez has not and cannot establish a *prima facie* case of discrimination or retaliation. The statements allegedly made by Plemmons, Troutman and DeSanto do not indicate that Valley based any decision relating to Gomez's employment on his race. Gomez has identified no evidence that Valley based any decision on his alleged participation in protected activity. In fact, Gomez himself stated that he thought DeSanto wanted to get him fired because Gomez had taken action which resulted in Valley terminating two of DeSanto's favorite servers. (Gomez Depo., pp. 157–160, 173–177).

Even assuming *arguendo* that Gomez could establish a *prima facie* case of discrimination or retaliation, Valley has articulated legitimate, nondiscriminatory reasons for its actions. As stated above, Valley's decision not to promote Mr. Gomez to General Manager was based on: (1) his inadequate job

performance as an Assistant Manager; (2) his negative attitude; (3) his supervisors' determination that he was not qualified to be a General Manager; (4) his lack of experience in full-service restaurant management; and (5) his own statements that he did not want the position. Mr. Gomez was counseled on multiple occasions regarding his job performance, and was provided multiple opportunities to make improvements. However, Mr. Gomez's job performance did not improve and Valley Hospitality made the decision to terminate his employment after he failed to report for work for four consecutive days and failed to provide a reason for his absence.

Mr. Gomez has not identified any evidence indicating that race or his alleged participation in protected activity played a part in Valley's decision not to promote him to General Manager or the termination of his employment. Gomez cannot demonstrate that he will be able to establish at trial that the employer's proffered nondiscriminatory reasons are a pretextual ruse designed to mask discrimination or retaliation.

Valley maintained thorough documentation regarding Mr. Gomez's ongoing performance issues, which confirms that he was counseled on multiple occasions regarding his job performance, and was provided multiple opportunities to make improvements. Despite this ongoing counseling, Mr. Gomez's job performance did not improve and Valley made the decision to terminate his

employment after he failed to report for work for four consecutive days without providing a reason for his absence. Accordingly, Gomez's discrimination and retaliation claims fail as a matter of law.

### C.   PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse action. *See Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004).

Gomez has not demonstrated that there is a causal connection between the charge of discrimination he filed with the EEOC on November 17, 2009 and Valley's decision to end his employment. To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity. *Gupta v. Fl. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000).

The Supreme Court has recognized that where an employee relies on the fact that the employer's knowledge of protected activity and an adverse employment action happened within a short period of time to establish the causal connection, courts have "uniformly [held] that the time between the two events must

be very short." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001). The Eleventh Circuit Court of Appeals has held that a three-month interval between the protected speech and an adverse action is too great, without more, to establish an inference of retaliation. *Higdon*, 393 F.3d at 1221; *see also Cooper Lighting*, 506 F.3d at 1364 (three-month period between protected activity and adverse employment action, without more, is not "very close").

Over three months passed between the time that Gomez filed his charge of discrimination and the end of his employment. Gomez has provided no evidence that Valley based its decision to end his employment on his charge of discrimination. The Eleventh Circuit has determined that three months, without more, does not establish a inference of retaliation.

In light of Gomez's behavior and the direct evidence showing that Valley's decision to end his employment was based upon on-going performance issues and his failure to comply with Valley's attendance policy, Valley respectfully submits that Gomez's retaliation claim fails as a matter of law.

## IV. <u>CONCLUSION</u>

In light of the above, Defendant Valley Hospitality Services, LLC respectfully requests that the Court dismiss Gomez's claims in their entirety.

This 15th day of April, 2013.

- 20 -

Respectfully submitted,


s/Meredith Riggs Guerrero
Joseph C. Chancey
Georgia Bar No. 120520
JChancey@deflaw.com
Meredith Riggs Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com

***Attorneys for Defendant Valley
Hospitality, LLC***

DREW ECKL & FARNHAM, LLP
880 W. Peachtree Street
P.O. Box 7600
Atlanta, GA 30357
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **DEFENDANT VALLEY HOSPITALITY SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

None

I further certify that I have mailed a true and correct copy of same by First Class United States Mail and also by Certified United States Mail/Return Receipt Requested (Certified Mail No. 7012 1010 0002 4837 0321), upon the following non-CM/ECF participants:

Alphonso Gomez
7 Melody Court
Columbus, GA 31907

This 15th day of April, 2013.

s/Meredith Riggs Guerrero
Meredith Riggs Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com
*Attorney for Defendant Valley Hospitality, LLC*

3589992/1
00935-075967